No. 57,412

State of Kansas, *Appellee,* v. Nelson Lem'Mons, *Appellant.*
(705 P.2d 552)

Opinion filed July 26, 1985.

*Morris D. Birch,* of Law Offices of Morris D. Birch, of Wichita, argued the cause and was on the brief for appellant.

*Calvin K. Williams,* of Carbondale, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal from a jury conviction of aggravated sodomy (K.S.A. 21-3506). The defendant, Nelson Lem'Mons, was found not guilty of rape. This prosecution arose after a five-year-old child complained to her mother that she had been sexually abused by the defendant. According to the child, the defendant had been at her father's place playing dominoes with the child's father, Charles Peterson. The defendant asked Peterson if he could go fishing with the child and the father consented. The child then got into the defendant's car and went to the defendant's home where they picked up some fishing gear and proceeded to a creek. According to the child, upon arriving at the creek defendant took the child to a secluded area where at the request of the defendant they participated in sexual activities. Based upon this interview, the State filed a complaint against the defendant, charging him with rape (K.S.A. 21-3502[a]); aggravated sodomy (K.S.A. 21-3506[b]); indecent liberties with a child (K.S.A. 21-3503[1][b]); and enticement of a child (K.S.A. 21-3509).

The child was interviewed several times by sheriff's deputies in which interviews the child made similar accusations against her father and a third man, in addition to repeating her charges against the defendant. Based upon these interviews, the State charged the child's father, Charles Peterson, with rape, aggravated sodomy, and indecent liberties with a child. Steps were also taken by a civil action to remove the child from the custody of the father. In the case charging Lem'Mons, Marian M. Burns was appointed on July 12, 1983, as counsel to represent defendant in that criminal prosecution. Marian M. Burns' husband, Clyde Burns, a partner in the law firm of Burns and Burns, was appointed to represent Charles Peterson in the criminal prosecution charging Peterson with the same offenses.

Defendant Lem'Mons' preliminary hearing was held on August 25, 1983. During that proceeding, a witness, Janet Humiston, who had been taking care of the child as a foster parent, was called on behalf of the State. The child had told that witness that

she had been sexually abused by her father and the defendant. At the preliminary hearing, Marian M. Burns attempted to inquire of the foster parent about the sexual abuse by the father. The State objected to this line of questions on the basis that it was irrelevant to Lem'Mons' preliminary hearing. Marian Burns, in response, stated that she thought it very possible that the child had been intimidated by her father. She suggested that it was the father who could have planted the charges against defendant Lem'Mons in the child's mind. Marian Burns further stated to the court that the child's whole story about defendant Lem'Mons was concocted by the father and that she was just saying it because of her father. Thus, at that early stage of the criminal action, Marian Burns pointed her finger directly at Charles Peterson as the instigator of the charges of child abuse against her client, Lem'Mons.

In the criminal action against Charles Peterson, an arraignment was held on September 15, 1983, and Peterson was bound over on the three sex charges. Peterson waived his preliminary hearing. It is undisputed that Charles Peterson has always maintained that the defendant, Lem'Mons, was the sole perpetrator of these sex offenses. In fact, it was Peterson who originally brought the child to the sheriff's office to give her statement which resulted in the criminal prosecution against Lem'Mons. As the two prosecutions developed, in February of 1984, the county attorney became very concerned with the possible conflict of interest resulting from the fact that Marian Burns represented Nelson Lem'Mons and Clyde Burns represented Charles Peterson as attorney in the latter's prosecution. Both defendants were charged with sexual abuse of Peterson's daughter and both of them were pointing the finger of guilt at the other.

On February 14, 1984, the county attorney sent a letter to the Burns and Burns law firm informing them of the possible conflict of interest. Marian Burns responded that she did not believe there was a conflict. Clyde Burns was not sure, and so a hearing date was set for Monday, February 20, 1984. In the interim, Marian Burns filed a motion moving the court to allow testimony of previous sexual conduct with the minor child. Marian Burns did not specifically state what the testimony involved was but referred to defendant Lem'Mons' preliminary hearing where the matter of sexual abuse by the father had come up. On February

17, 1984, Marian Burns called the county attorney's office and stated to the legal intern who handled the case that she felt the State had the wrong man, and that she intended to subpoena the father, Charles Peterson, as a witness. At about this time, the county attorney also sent a letter to Clyde Burns in regard to the prosecution's stand on plea bargaining. At this point, the county attorney felt certain that there was a conflict of interest because of the representation of Lem'Mons and Peterson by members of the same law firm.

On February 20, 1984, the county attorney filed a motion requesting the court to excuse the firm of Burns and Burns from representing defendant Lem'Mons on the grounds that the firm had a conflict of interest in the case. Attached to the motion was a comprehensive memorandum of law in support of the State's motion setting forth in detail the facts and law in regard to the conflict of interest. There is nothing in the record to show that the motion was ever considered and determined by the court. Counsel in their briefs have not advised this court in that regard. It appears that the defendant failed to appear for his trial on February 24, 1984, and was later arrested and returned from Florida. The case was tried on March 29 and March 30, 1984. Marian Burns represented the defendant throughout the trial, at the hearing on the motion for a new trial, and at sentencing. After sentence was imposed, the defendant stated to the court that he no longer wanted Marian Burns to represent him and that his relatives had made arrangements for other counsel to represent him on appeal. On September 26, 1984, a notice of appeal was filed by Morris D. Birch, who has represented the defendant on the appeal in this court.

Morris D. Birch, representing the defendant, has raised ten points on the appeal. The first two points take the position that the defendant was denied his constitutional right to representation by counsel, as guaranteed by the Sixth Amendment to the United States Constitution, based on the fact that defendant did not have adequate, competent counsel during the prosecution and trial and particularly because of the conflict of interest mentioned heretofore. The other eight points on the appeal involve claimed trial errors, including evidentiary matters, the court's instructions, prosecutorial misconduct, and the overruling by the trial court of a number of procedural motions filed on behalf of the defendant.

Our reading of the record in this case gives this court a great deal of concern. The record in the case is a mess. This court is also concerned that the trial court apparently ignored the State's motion to disqualify Marian Burns on the basis of a conflict of interest when an important issue involving a fundamental constitutional right had been raised by the State. It should also be mentioned that the court reporter's transcripts are confusing and full of errors.

It has long been recognized that an attorney's representation of more than one defendant in a criminal prosecution or more than one defendant charged with the same crime, even though they are tried separately, may make it difficult, or even impossible, for the attorney to give each such defendant the effective assistance of counsel which is his right under the Sixth Amendment to the United States Constitution. However, the rule is well established that the Sixth Amendment is not violated by the mere fact of multiple representations; for a violation to occur, that multiple representation must result in a *conflict of interests. Glasser v. United States,* 315 U.S. 60, 86 L.Ed. 680, 62 S.Ct. 457, *reh. denied* 315 U.S. 827 (1942); *Holloway v. Arkansas,* 435 U.S. 475, 55 L.Ed.2d 426, 98 S.Ct. 1173 (1978); *Cuyler v. Sullivan,* 446 U.S. 335, 64 L.Ed.2d 333, 100 S.Ct. 1708 (1980); *State v. Young,* 196 Kan. 63, 410 P.2d 256 (1966). Annot., Multiple Representation of Defendants in Criminal Case as Violative of Sixth Amendment Right to Counsel—Federal Cases, 64 L.Ed.2d 907. In *Holloway v. Arkansas,* the court held that where there is a showing of conflict of interest arising out of an attorney's joint representation of two defendants in a joint criminal prosecution, there is a presumption of prejudice.

1 American Bar Association Standards for Criminal Justice, The Defense Function, § 3.5(b) covers the subject of conflict of interest in multiple representation and declares as follows:

"(b) Except for preliminary matters such as initial hearings or applications for bail, a lawyer or lawyers who are associated in practice should not undertake to defend more than one defendant in the same criminal case if the duty to one of the defendants may conflict with the duty to another. The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation."

The Kansas Code of Professional Responsibility, Canon 5, 235 Kan. cxlv, is in conformity with the ABA Standards by providing as follows:

"DR 5-105 *Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.*

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5-105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5-105(C).

"(C) In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

"(D) If a lawyer is required to decline employment or to withdraw from employment under DR 5-105, no partner or associate of his or his firm may accept or continue such employment."

The appellate courts of Kansas have expressed their concern when a conflict of interest arises from the representation of multiple defendants in a single criminal transaction. In *State v. Leigh*, 178 Kan. 549, 289 P.2d 774 (1955), the court observed:

"The inviolate rule has long been firmly established both in the Canons of Professional Ethics and by judicial opinions that attorneys cannot represent conflicting interests or undertake to discharge inconsistent duties. When an attorney has once been retained and received the confidence of a client, he cannot enter the services of those whose interests are adverse to that of his client or take employment in matters so closely related to those of his client or former client as, in effect, to be a part thereof. The rule is a rigid one, and it is well that it is so. It is designed not only to prevent the dishonest practitioner from fraudulent conduct, but to preclude the honest practitioner from placing himself in a position where he may be required to choose between two conflicting duties. He should undertake no adverse employment, no matter how honest may be his motives and intentions. He owes to his client fidelity, secrecy, diligence and skill, and cannot take a reward from the other side." p. 552.

In *State v. Young*, 196 Kan. 63, it was held that the right of a person charged with crime to counsel under Section 10 of the Kansas Bill of Rights and the Criminal Code of Procedure is infringed where counsel appointed over the objection of the accused was acting as counsel for a codefendant where a conflict

of interests between defendants appeared to be a possibility. The duty of a trial court to appoint counsel for an indigent accused includes the proviso that such counsel have no interest adverse to the accused which would interfere with a fair presentation of his defense. *State v. Sullivan & Smith*, 210 Kan. 842, 504 P.2d 190 (1972), declares that conflict of interest is a sensitive area in the law and that it has been recognized as such by the legal profession and has been codified in Canon 5, DR-105 of the Code of Professional Responsibility.

*State v. Hilton*, 217 Kan. 694, 538 P.2d 977 (1975), was an original proceeding in discipline where an attorney was censured for undertaking to represent codefendants in a criminal case. *Hilton* discusses disciplinary rule 5-105 and states that in undertaking to represent codefendants in a criminal case, counsel should always be aware of conflicts which may and frequently do arise. The court states that the most serious conflict that might arise is where one defendant takes a plea and becomes a State's witness while the other goes on to trial on a plea of not guilty to the same charge.

In *State v. West*, 2 Kan. App. 2d 297, 578 P.2d 287 (1978), the court cites *Glasser v. United States* and *Holloway v. Arkansas*, and states that requiring an attorney to represent codefendants whose interests are in conflict denies them the effective assistance of counsel. The court further holds that the effective assistance of counsel under the Sixth Amendment is a "constitutional right" so basic to a fair trial that its denial can never be treated as harmless error. A recent case on conflict of interest is *State v. Rice*, 227 Kan. 416, 607 P.2d 489 (1980). The opinion by Justice Holmes discusses in some depth the subject of ineffective assistance of counsel and the problem of conflict of interest. The court recognizes the problem which exists where two lawyers of the same law firm are employed by separate defendants in a criminal case and states in the syllabus the following principle of law:

"A lawyer should not accept or continue representation of any client if the lawyer's partner or associate would be disqualified from accepting or continuing the same employment due to a conflict of interest or if the representation creates an appearance of impropriety." Syl. ¶ 3.

With these professional standards and decisions in mind, we turn now to the factual circumstances presented in the case now

before us. Marian Burns, as appointed counsel for the defendant, was notified by the county attorney by letter after the preliminary hearing that a conflict of interest existed because she represented the defendant Nelson Lem'Mons at the same time her law partner, Clyde Burns, was representing Charles Peterson. It would be extremely difficult to find a case with a more obvious conflict of interest than is presented by the factual circumstances in the present case. The child victim in this case accused not only defendant Lem'Mons but also her father, Charles Peterson, and a third man of a sexual attack upon her. The father, Charles Peterson, who was the defendant in another case involving the same charge, took his daughter to the sheriff's office and was one of the persons who originally accused Lem'Mons of having committed the crime. Peterson was charged with the same offense based upon the statements made by his daughter. His defense was that he had not committed the crime and that it was defendant Lem'Mons who was the offender.

Marian Burns, as appointed counsel on behalf of Lem'Mons, took the position that the charges against Lem'Mons had been dreamed up by Charles Peterson and that it was Peterson who was guilty of sexual attacks on the child. The conflict of interest here is obvious. This conflict of interest was shown at the preliminary hearing and continued during the trial itself. At the preliminary hearing, Marian Burns stated for the record that it was her position that Charles Peterson, who was her own law firm's client represented by her husband, Clyde Burns, was the actual perpetrator of the crime.

At the trial, Marian Burns called Charles Peterson as a witness on behalf of the defendant and asked him questions of a self-incriminating nature. It reached the point where the prosecution objected to further questions on the subject. Thereupon, the court deemed it necessary to advise Peterson that he should have the advice of counsel before answering any further questions. The court noted that Peterson had been sentenced by the court the previous day in a criminal case where plea bargaining had taken place involving the dismissal of the same charges against him for sexual abuse of his daughter. The record shows that the court told Peterson that he was entitled to have an attorney advise him as to his immunities and his rights. The court specifically advised him that it did not believe that it would be

appropriate for Peterson to be advised by Marian Burns or a member of her firm. The witness Peterson stated he didn't believe he needed any advice. It is difficult to imagine a situation where a conflict of interest could be more evident.

The county attorney, in his memorandum of law in support of the State's motion to excuse counsel, clearly anticipated the extreme problem of conflict of interest which arose in this case. In that memorandum, the county attorney pointed out that if Marian Burns attempted to call Peterson she would be forced either to impeach her firm's client, Peterson, or be in a position where she could not give Lem'Mons her undivided loyalty. The prosecution took the position in the trial court and did not deny in its oral argument before this court that there was a clear conflict of interest in this case.

In our judgment, when two defendants involved in the same criminal transaction implicate each other and point the accusing finger at the other as in this case, there can be no undivided loyalty to each client. We do not understand why the trial court did not take up the State's motion and hold an in-depth hearing on the question of conflict of interest. In the trial court, the county attorney in his memorandum of law in support of the State's motion to excuse counsel stated as follows:

"In this case, there is not merely a possibility of harm; rather the harm is concrete and actual. Relying upon Mrs. Burns preliminary hearing arguments, as well as her motion to bring forth testimony in regards to Mr. Peterson abusing his daughter, as well as comments to the prosecution intern, show that a conflict is not merely speculative but actual. . . . It is clear that 'undivided loyalty' by the firm of Burns & Burns to either Lem'Mons or Peterson is a legal and factual impossibility after what has already transpired."

On appeal, the State in its brief argues, in substance, that defense counsel's performance fell within reasonable professional assistance. Furthermore, it is argued that the evidence against defendant Lem'Mons was overwhelming and that the record fails to show any prejudice as the result of the representation by Marian Burns. This court simply cannot accept that position. The courts of Kansas have an obligation to protect the rights of a person charged with a criminal offense and see that such a person is afforded a fair trial. In the case now before us, the representation of the defendant Lem'Mons by Marian Burns constituted a conflict of interest clearly in violation of DR 5-105, Kansas Code of Professional Responsibility; 1 ABA Standards for

Criminal Justice, The Defense Function, § 3.5(b); and the basic concepts contained in the decisions of this court and the United States Supreme Court discussed in the opinion. The defendant is entitled to a new trial where he must be represented by counsel not subject to a conflict of interest.

As to the other points raised on the appeal, the court declines to rule on those issues. In a new trial of this case, the same issues may arise again and, assuming appropriate action is taken by defense counsel to protect the rights of the defendant, the trial court should reconsider its various evidentiary rulings and the other questions raised. We leave those decisions to the trial court when the case is again retried before a jury.

For the reasons set forth above, the judgment of the district court is reversed and the case is remanded to the district court with directions to afford the defendant a new trial.

LOCKETT, J., concurs in the result.

HERD, J., dissenting: The representation of both Nelson Lem'Mons and Charles Peterson by the same law firm, in cases where both were accused of sexually abusing Peterson's five-year-old daughter, presents a clear case of conflict of interest initially. However, Charles Peterson pled guilty to reduced charges prior to Lem'Mons' trial; thus, to a large extent, the conflict was resolved.

It is not our duty on appellate review to search for means of reversing the trial court, but rather it is our duty to affirm if we can find a constitutional method of so doing. Lem'Mons was convicted by a jury of one of the most serious crimes known to our civilization. I would hold the conflict of interest was removed by Peterson's plea of guilty, but if the conflict had a residue of taint, I would rule it harmless error in light of the evidence against Lem'Mons. I would affirm.