No. 70,958

STATE OF KANSAS, *Appellee*, v. WALTER L. JENKINS, *Appellant.*
(898 P.2d 1121)

Opinion filed June 20, 1995.

*Jessica R. Kunen*, chief appellate defender, argued the cause, and *Max Rowinsky*, assistant appellate defender, was with her on the brief for appellant.

No appearance by appellee.

*Charles D. Dedmon*, of Topeka, was on the brief for *amicus curiae* the Kansas Association of Criminal Defense Lawyers.

The opinion of the court was delivered by

DAVIS, J.: This case comes before us on defendant's petition for review of his conviction for sale of cocaine. He argued before the Court of Appeals that his Sixth Amendment right to effective assistance of counsel was violated because of his trial counsel's conflict of interest. The Court of Appeals acknowledged that a conflict of interest existed and that there had been no waiver of the conflict of interest by the defendant. However, the Court of Appeals ruled that the defendant had failed to establish that the conflict adversely affected his attorney's performance and affirmed. For the reasons set forth below, we conclude that the defendant was denied his Sixth Amendment right to effective assistance of counsel because of his trial counsel's conflict of interest.

Walter L. Jenkins was charged with one count of sale of cocaine in connection with an incident which occurred on July 19, 1992. Tracy Mouser, to whom Jenkins allegedly sold cocaine, was work-

ing as an informant for the Liberal Police Department, making controlled buys of illegal substances. In exchange for making these controlled buys, the Liberal Police Department promised not to bring a previous charge of sale of cocaine against Mouser.

On the night in question, Mouser contacted Detective John Schnoor and told him that he would attempt to buy cocaine from the defendant. Prior to the buy, Schnoor strip-searched Mouser, placed a recording device on him, and gave him $40 to buy a rock of cocaine. Schnoor also searched Mouser's vehicle to determine that there was no cocaine present. Schnoor then followed Mouser to the defendant's house.

Schnoor saw Mouser walk up to the front door. Schnoor then drove down the block, made a U-turn, and parked just south of the house. When Mouser emerged from the house, he followed Mouser from the house back to the police training center, where Mouser gave him a rock later identified to be cocaine and a tape recording of the transaction.

Linda Trigg was appointed to represent the defendant. At the preliminary hearing, Trigg became concerned about the appearance of a possible conflict of interest because she had previously represented Mouser on unrelated charges based on events that had occurred during the time he was working as a confidential informant. Trigg asked to voir dire Mouser, and the following exchange took place:

"[Trigg]: And you're currently incarcerated with the secretary of corrections on some burglary charges in which I was your attorney, is that correct?

"[Mouser]: Yes.

"[Trigg]: Those charges that you were convicted of with regard to the U-Pump-It burglaries, those—that activity occurred during the time that you were working as a confidential informant for the Liberal Police Department, is that correct?

"[Mouser]: Yes.

"[Trigg]: And I represented you at that time and was informed by the Liberal Police Department and by you that you had been working as a confidential informant, so I knew. And I discussed with you the possibility that I may be representing—appointed to represent some of the people that you were going to—that you had made buys from allegedly, is that correct?

"[Mouser]: Yes.
"[Trigg]: And we discussed at that time that if I did that, I would be completely finished representing you as far as any deal you had with the police department or the county attorney, is that correct?
"[Mouser]: Yes.
"[Trigg]: You had, in essence made your deals with the county attorney. You have held up your end of them, and the county attorney's held up his end of them, is that correct?
"[Mouser]: Yes.
"[Trigg]: Do you believe that I can—How am I going to put this? Do you think there's any way I can hurt you or help you at this time, given that you've already made your deals with the county?
"[Mouser]: No.
"[Trigg]: And do you have any objection to me representing people who are essentially on the other side of cases you're going to be testifying in?
"[Mouser]: No.
"[Trigg]: That meets with your approval?
"[Mouser]: Yes."

Trigg then addressed the court, saying, "Your Honor, for the record, I would state that I have discussed this with my client here today, Mr. Jenkins. And I would just ask him, Mr. Jenkins, you were aware of the fact that I had represented Mr. Mouser at an earlier date?" After Jenkins stated that he was aware of that fact, Trigg asked, "And are you willing to go forward with me as your attorney in this case?" to which Jenkins answered, "Yes."

Trigg represented Mouser on a burglary case which had occurred during the time Mouser was working as a confidential informant. She represented him at his plea hearing on October 2, 1992, wherein he pled guilty to two counts of burglary. She also represented him at sentencing on December 16, 1992. Trigg was appointed to represent the defendant on February 26, 1993. She represented the defendant at his preliminary hearing at which Mouser testified on March 31, 1993. She then represented Mouser on his motion to modify sentence, which motion was heard by the court on April 27, 1993. Trigg continued her representation of the defendant during his trial on September 29, 1993.

On the day of trial, the defendant requested a continuance because one of his alibi witnesses, his cousin Houston White, was unavailable to testify. According to Trigg, White lives in Little

Rock, Arkansas, and she was unable to contact him until that morning. However, White was in Kansas City on business that day and could not testify. Trigg stated that White had told her he could make himself available to testify if she could obtain a continuance. Trigg also offered an affidavit in accordance with K.S.A. 60-240(c) which stated that, because of White's employment as a circuit minister and salesman, she had been unable to contact him. The affidavit proffered that if allowed to testify, White would testify that defendant was in Arkansas on July 19 and could not have sold cocaine to Mouser.

The district court denied the request for continuance. The court further found insufficient evidence to show the unavailability of White and efforts to compel his attendance and, therefore, denied the admission of the affidavit under K.S.A. 60-240(c).

At trial, Mouser testified that he was a cocaine addict with a prior record for burglary and driving while his license was suspended, as well as a charge of burglary which had occurred during the time he was working as a confidential informant. Mouser also testified that he was currently in the county jail on the burglary charge.

According to Mouser, he purchased $40 worth of cocaine from the defendant on July 19, but he, the defendant, and some others smoked some of the cocaine before Mouser left the defendant's house.

On cross-examination, Trigg questioned Mouser concerning the presence of other people in the house. Mouser admitted that he made a mistake during the preliminary hearing when he had testified that the defendant, a man named Darrel Brown, a woman, and two other males whom he did not know were present at the defendant's house. Mouser also admitted that he used controlled substances during the time he worked as a confidential informant and that his association with the Liberal Police Department came to an end when he was arrested on a burglary charge. Mouser testified that he pled guilty to every burglary charge that had been filed against him.

The State also introduced the tape of the transaction made by Mouser. The only witness to identify the voice of the defendant on the tape was Mouser. The tape is not part of the record.

The defendant presented an alibi defense. According to the defendant, he and his brother had driven to Little Rock, Arkansas, on July 18 to celebrate his birthday. They did not return until July 22. The defendant stated that he recognized the voices of Darrel Brown and Lynn Ray Bowie on the tape as the persons selling the cocaine. Brown was a roommate of the defendant at the time. The defendant's brother, Anthony Ray Jenkins, corroborated the alibi.

The State called Raul Gomez in rebuttal to the defendant's alibi defense. Gomez testified that he was with the defendant at his residence on July 19. However, Gomez also admitted he was a drug user and had worked as an informant for the Liberal Police Department.

The jury convicted the defendant of sale of cocaine. The Court of Appeals, in an unpublished opinion, found that the defendant had clearly shown a conflict of interest, that the defendant had not waived the conflict, and that the conflict did not adversely affect defense counsel's performance. (*State v. Jenkins*, No. 70,958, unpublished Court of Appeals opinion, filed October 28, 1994). On the issue of whether the district court erred in not allowing a continuance, the Court of Appeals found no abuse of discretion and so affirmed the defendant's conviction and sentence.

Jenkins argues that his Sixth Amendment right to effective assistance of counsel was denied because his counsel at trial was also representing Tracy Mouser, the State's primary witness against him, in an unrelated case. The Kansas Association of Criminal Defense Lawyers filed an *amicus curiae* brief arguing that there was an actual conflict of interest requiring reversal. The State did not file a brief before this court, nor did the State present an argument before this court.

## INEFFECTIVE ASSISTANCE OF COUNSEL— CONFLICT OF INTEREST

The defendant raised the issue of ineffective assistance of counsel for the first time before the Court of Appeals. In *State v. Van Cleave*, 239 Kan. 117, 119, 716 P.2d 580 (1986), this court held that an allegation of ineffective assistance of counsel may not be considered for the first time on appeal. Instead, we said that the

issue, factual in nature, should be raised by a K.S.A. 60-1507 motion or through a request to remand the issue to the district court for hearing. 239 Kan. at 119-20.

The Court of Appeals acknowledged our holding in *Van Cleave* but determined that remand was unnecessary because the defendant had failed to present evidence warranting a new trial. The claim of ineffective assistance of counsel usually arises from a defendant's contention that his counsel's performance at trial was deficient and deprived the defendant of a fair trial. When such a claim is raised for the first time on appeal, the record does not permit appellate review. The question raised usually involves a factual as well as legal determination. Generally, it is appropriate to obtain a response from the defense counsel concerning the allegation of ineffective assistance. Without additional evidence and without a trial court determination upon a hearing, an appellate court is in no position to resolve the issue.

This case involves a claim of ineffective assistance of counsel but is based on the defendant's contention that a conflict of interest prevented his counsel from providing effective assistance. We have considered the record in this case and determine that all facts necessary for resolution of the issue are contained in the record. Under these circumstances, remand would serve no useful purpose. We, therefore, proceed to the question of whether the defendant's Sixth Amendment right to effective assistance of counsel was violated.

We need not pause too long on the question of whether there was a conflict of interest for defense counsel in this case. Counsel represented the defendant on the charge of selling of cocaine and also represented a key prosecution witness against defendant on an unrelated burglary charge which took place during the same time period as the defendant's alleged offense. Credibility was a critical factor in the defendant's trial. Was the jury to believe the defendant and his alibi or was it to believe the prosecution's key witness—the witness who, as an informant for police, bought the cocaine from the defendant? The record established that counsel was involved in an attorney-client relationship with the defendant and the key prosecution witness and was representing both during the trial of the defendant.

The Court of Appeals determined that an actual conflict of interest existed and that the evidence of record did not establish that the defendant waived this conflict of interest. We agree with these conclusions. The Court of Appeals also concluded that the defendant's conviction should be affirmed because there was no showing that the conflict of interest adversely affected his attorney's performance. We disagree and, for the reasons set forth below, reverse the defendant's conviction and remand for a new trial.

The United States Supreme Court, in two significant cases, has addressed the question of counsel conflict and the Sixth Amendment right of an accused to effective assistance of counsel. The approaches taken by these two cases are divergent and dependent upon the extent to which the alleged conflict was brought to the attention of the trial court. See *U.S. v. Cook,* 45 F.3d 388, 393 (10th Cir. 1995).

In the case of *Holloway v. Arkansas,* 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978), three codefendants made timely motions, both a few weeks before the trial and again before the jury was empaneled, for appointment of separate counsel based on their appointed counsel's representations that because of confidential information received from a codefendant, he was confronted with the risk of representing conflicting interests and could not, therefore, provide effective assistance for each client. The trial court denied these motions, and petitioners were subsequently convicted. The Arkansas Supreme Court affirmed. *Certiorari* was granted to decide whether the denial of the motions deprived petitioners of the effective assistance of counsel. 435 U.S. at 477.

After discussing the real difficulty of counsel in attempting to represent three defendants, one of whom confessed to the robbery that all the defendants were charged with but denied any part in the two rapes all the defendants were charged with, *Holloway* held that:

"[T]he failure, [of the trial judge to either appoint separate counsel or to take steps to ascertain whether the risk of conflict was too remote] in the face of the representations made by counsel weeks before trial and again before the jury was empaneled, deprived petitioners of the guarantee of 'assistance of counsel.'" 435 U.S. at 484.

The Court also noted that the trial judge has a duty of seeing that the trial is conducted with solicitude for the essential rights of the accused and a duty to protect the rights of the accused to have the effective assistance of counsel. Relying on its case of *Glasser v. United States*, 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457 (1942), *Holloway* concluded that whenever a trial court improperly requires joint representation over timely objection, reversal is automatic. 435 U.S. at 488.

By way of explanation of its departure from the general rule that in the case where a claim of ineffective assistance of counsel is made, a defendant must establish prejudice in order to prevail, *Holloway* states:

"Moreover, this Court has concluded that the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' [Citation omitted.]

. . . .

"Finally, a rule requiring a defendant to show that a conflict of interests—which he and his counsel tried to avoid by timely objections to the joint representation—prejudiced him in some specific fashion would not be susceptible of intelligent, evenhanded application. In the normal case where a harmless-error rule is applied, the error occurs at trial and its scope is readily identifiable. Accordingly, the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury. [Citations omitted.] But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation." 435 U.S. at 489-91.

Two years after *Holloway*, the Supreme Court decided the case of *Cuyler v. Sullivan*, 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980). Unlike *Holloway*, the possible conflict of interest for counsel in *Cuyler* was not brought to the trial court's attention. *Cuyler* also involved multiple representations where two privately

retained lawyers represented three criminal defendants charged with first-degree murder. All the defendants were tried separately. The first defendant to come to trial was found guilty on the basis of circumstantial evidence after the defendant rested without presenting any evidence. The other two codefendants were acquitted. The first defendant alleged that he had been denied effective assistance of counsel because his defense lawyers represented conflicting interests. At a hearing on this issue one of the lawyers testified that concern for the other two codefendants had influenced his judgment not to present a defense. The Pennsylvania Supreme Court affirmed the conviction by an equally divided court; on *certiorari* the Supreme Court vacated and remanded. In establishing the standard to be applied to cases in which the potential conflict is not brought to the trial court's attention, the Court held:

> "*Holloway* requires state trial courts to investigate timely objections to multiple representation. But nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. . . . Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. . . . Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." 446 U.S. at 346-47.

The Court held:

> "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. . . .
> "Glasser established that unconstitutional multiple representation is never harmless error. . . . Thus a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. [Citation omitted.] But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." 446 U.S. at 348-50.

Thus, when a possible conflict exists, but the trial court is not advised of the possibility, the limited presumption set forth in *Cuyler* applies, and the defendant, in order to establish a violation of his Sixth Amendment right to the effective assistance of counsel, must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. See *Cuyler*, 446 U.S. at 348. On

the other hand, we hold that where the trial court is advised of the possibility of a conflict by either the defendant or the State, the court is required to initiate an inquiry to insure that the defendant's Sixth Amendment right to counsel is not violated. In this instance, a showing that there is an actual conflict of interest will result in automatic reversal. See *Holloway*, 435 U.S. at 489. Prejudice to the defendant is presumed, and reversal of the defendant's conviction is automatic.

Under *Cuyler*, in the face of a silent record, where the defendant makes no objection before the trial court, the possibility of a conflict of interest is not sufficient to impugn a criminal conviction. 446 U.S. at 348-50. The defendant must show that "counsel actively represented conflicting interests" and that the "conflict of interest adversely affected his lawyer's performance." Once an actual conflict and an adverse effect are shown, a defendant "need not demonstrate prejudice in order to obtain relief." 446 U.S. at 349-50.

The above cases involve multiple representation but apply in any situation where there is a possibility defense counsel suffers from any sort of conflict of interest. The trial court has an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment. *Wheat v. United States*, 486 U.S. 153, 161, 100 L. Ed. 2d 140, 108 S. Ct. 1692 (1988).

We have had occasion to apply *Holloway*. In *State v. Lem'Mons*, 238 Kan. 1, 9-10, 705 P.2d 552 (1985), when confronted with a case in which two codefendants were represented by attorneys from the same firm, we did not require a showing that an actual conflict of interest adversely affected each defendant's lawyer's performance, even though the State, not the defendant, objected. Instead, we noted that the State had brought the matter to the trial court's attention, and we commented: "We do not understand why the trial court did not take up the State's motion and hold an in-depth hearing on the question of conflict of interest." 238 Kan. at 9. In response to the State's argument on appeal that the defendant had failed to show prejudice, we stated:

"This court simply cannot accept that position. The courts of Kansas have an obligation to protect the rights of a person charged with a criminal offense and

see that such a person is afforded a fair trial. In the case now before us, the representation of the defendant Lem'Mons by Marian Burns constituted a conflict of interest clearly in violation of DR 5-105, Kansas Code of Professional Responsibility; 1 ABA Standards for Criminal Justice, The Defense Function, § 3.5(b); and the basic concepts contained in the decisions of this court and the United States Supreme Court discussed in the opinion. The defendant is entitled to a new trial where he must be represented by counsel not subject to a conflict of interest." 238 Kan. at 9-10.

We also addressed the question of conflict of interest in a case involving a similar conflict to the one we now consider. In *In re Habeas Corpus Petition of Hoang*, 245 Kan. 560, 781 P.2d 731 (1989), *cert. denied* 494 U.S. 1070 (1990), Hoang was represented by Mr. Ney of the Public Defender's Office. Mr. Ney discovered that his office had represented Binh Van Tran, who was a key prosecution witness against Hoang. Ney advised the prosecutor, who made a motion in limine to prohibit defense counsel from bringing out the prior representation. The trial court was alerted immediately after opening statements that a possible conflict of interest existed with defense counsel. Soon thereafter the prosecutor objected to the representation, and the court held that a conflict of interest existed, disqualified Ney as defense counsel, and declared a mistrial. New counsel then filed a motion seeking dismissal of the charges on the grounds that the mistrial had been granted improperly and that a trial would result in Hoang being twice placed in jeopardy contrary to the Fifth Amendment of the United States Constitution. We held that the trial court had properly disqualified counsel based upon a conflict of interest and properly declared a mistrial. In discussing the question of conflict of interest, we said:

"If a defense attorney's scope of cross-examination of a key prosecution witness is restricted to avoid possible violation of the attorney-client privileges of the witness, then the defendant has major claims of ineffective assistance of counsel and lack of a fair trial. If the examination is not restricted, then the witness' attorney-client privilege may be violated. It is a significant public policy that individuals be free to disclose confidential information to their attorneys without fear of subsequent examination on and disclosure of those communications. The judge has a duty to maintain the integrity of the administration of the justice system." 245 Kan. at 562.

The question remains whether this case is governed by *Holloway* or by *Cuyler*. The defendant and *amicus curiae* argue that at the preliminary hearing the trial court was put on notice by defense counsel's questioning of Mouser concerning a possible conflict. Defense counsel made it clear that she had previously represented a key prosecution witness against the defendant, whom she was also representing. Under these circumstances, notwithstanding the lack of an objection by defense or prosecution, the defendant and *amicus curiae* assert that the trial court had a duty to inquire under *Holloway*.

The resolution of this question is not an easy one. In *Holloway*, as well as in *Lem'Mons*, there was an objection lodged on the question of a conflict of interest. The objection alerts the trial court as to a possible conflict of interest that may affect the defendant's Sixth Amendment right to effective assistance of counsel. Based upon the objection, the court knows or should know that a potential problem exists and is therefore under a duty to inquire. However, in this case, no objection by either party was made. In *Cuyler*, the Supreme Court said:

> "*Holloway* requires state trial courts to investigate timely objections to multiple representation. But nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." 446 U.S. at 346-47.

*Cuyler* also states "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." 446 U.S. at 347.

In this case, even without the benefit of an objection by counsel, we believe that *Holloway* controls because of the following special circumstances. The case we deal with is not a case of multiple representation where one attorney represents more than one defendant charged with the same crime. In such a case, the possibility of a conflict exists, but the multiple representation may not present

any conflict depending on the facts of each case. Without an objection, the trial court is in no position to know that a particular conflict exists. However, in this case, the trial court was presented with information that established an actual conflict—defense counsel represented the key prosecution witness. Further, the crime for which defense counsel represented the key prosecution witness occurred during the time the witness was acting as a confidential informant for the State in the drug transaction involved in this case. It was readily apparent that confidential information in one case would be relevant in the other case. Thus, the court knew that an actual conflict existed.

Moreover, while statements made at the preliminary hearing suggested that the defendant and counsel may have discussed the matter of conflict before the hearing, nothing of record established that the defendant waived the conflict of interest. The court was put on notice that a conflict of interest existed and that the defendant had not waived the conflict on the record. Under these circumstances, given the obligation of the trial court to protect the defendant's right to a fair trial and the information available to the court from the defense counsel, we conclude that the rule established in *Holloway*, rather than the rule established in *Cuyler*, applies and that the trial court had an obligation to inquire further into the conflict of interest. Because the trial court failed to do so, the defendant's conviction must be reversed.

Under the rule established by the United States Supreme Court in *Holloway* and applied by this court in *Lem'Mons*, based on the actual conflict of interest present in this case, the trial court's knowledge of the conflict, and its knowledge that the conflict had not been waived, the defendant's conviction must be reversed. Contrary to the decision of the Court of Appeals, we conclude that under the special circumstances present in this case, the defendant need not show that his defense counsel's conflict of interest adversely affected the counsel's performance.

Furthermore, we conclude that application of *Cuyler* would also require reversal of the defendant's conviction. Under *Cuyler*, a defendant who raises no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's per-

formance. The record establishes such an adverse effect. Mouser admitted that he ingested rock cocaine at the time he sold the cocaine to the defendant. Yet, defense counsel asked no questions concerning the effect the drug had on him or how the drug may have altered his perceptions or his memories or his ability to accurately recall the events or the date the events occurred. Counsel did not question Mouser regarding his admitted addiction to cocaine or to what lengths Mouse might go to obtain drugs or the money necessary to buy drugs for himself. The evidence at trial did establish that Mouser received money from the police each time he made a sale.

While *Cuyler* does not discuss what is required to show that a conflict of interest "adversely affected" the performance of counsel, it is clear that this standard is a lesser burden than that necessary to establish prejudice under the standard for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). A defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief because the conflict itself demonstrates a denial of the right to have the effective assistance of counsel. *Cuyler*, 446 U.S. at 349. Under the facts of this case, we conclude that the defendant has shown that defense counsel's conflict of interest adversely affected her performance. Nothing more is required under *Cuyler*.

Our resolution of these issues does not require us to address the defendant's separate contention concerning whether the district court erred in failing to grant a continuance.

Reversed and remanded.