NOT DESIGNATED FOR PUBLICATION

No. 119,235

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARCUS SHAMILLYON JACKSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed February 8, 2019. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, and *Marcus Shamillyon Jackson*, pro se, for appellant.

*James Antwone Floyd*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., POWELL, J., and STUTZMAN, S.J.

PER CURIAM: A jury found Marcus Shamillyon Jackson guilty of aggravated burglary and fleeing or attempting to elude a police officer. Jackson appeals his convictions, claiming that the district court erred by (1) improperly instructing the jury on the mental state required to be guilty of committing aggravated burglary, (2) allowing evidence of Jackson's prior bad acts, and (3) failing to inquire into possible conflicts between Jackson and his trial attorney, including why Jackson's trial attorney did not

1

attempt to recuse the district judge. After a review of the record, we find no reversible error by the district court and affirm Jackson's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2015, the State charged Jackson with one count of aggravated burglary and one count of eluding a police officer. Before trial, Jackson filed a pro se motion in limine seeking to bar the State from eliciting testimony or presenting other evidence of any prior record that Jackson might have. The district court granted Jackson's motion and told Jackson that the State would not be able to go into any specific acts of conduct other than the ones in question in the current case.

A jury trial was later held where the following facts were presented as evidence. In October 2015, Detective Michael Helvie, with the Kansas City, Missouri, Police Department, was investigating a series of burglaries that occurred in the Kansas City area. During the course of that investigation, Jackson emerged as a suspect. The police had determined that Jackson had pawned items stolen during recent burglaries. On the day in question in this case, Helvie was conducting surveillance on Jackson. Jackson was driving a Buick Rendezvous. Helvie was able to easily keep track of Jackson because a GPS tracking device had previously been attached to Jackson's vehicle.

Helvie and a team of police officers went to the area where Jackson's vehicle was located. Helvie started to walk around the neighborhood to look for Jackson because he believed that Jackson was targeting that neighborhood for several crimes. Helvie saw Jackson walk up to parked vehicles and look inside. Helvie explained that he had seen similar behavior from individuals who were looking for items to steal.

2

Jackson left that neighborhood and drove to Kansas City, Kansas. Helvie and other officers followed. A short time after arriving, Helvie learned that local police were being called about a burglary in progress in the area where Jackson's vehicle was located.

That call came from Mary and Melvin Myer. Mary woke up because her dog was growling. She woke up Melvin, and Melvin went to see what was upsetting the dog. Melvin saw light from a flashlight in the family room and saw an individual in the process of disconnecting Melvin's television. Melvin told the individual to get out of his house, and the person fled through a nearby door. Melvin watched the person flee through his backyard and noticed that another person was in the yard. The second person began to flee the yard. Melvin went back inside and told Mary to call 911, which she did.

Jackson's Buick Rendezvous was seen leaving the neighborhood shortly after Mary called 911. Police officers chased the vehicle in an attempt to stop it. After being pursued by the police for a time, the Buick Rendezvous crashed into a bridge. One individual fled the vehicle. Police took the other person in the vehicle, Carl Williams, into custody.

Meanwhile, police were searching for the individual who fled the crash. While searching, police located a shoe that they believed belonged to the individual. Later, Officer James Mahoney, Jr., saw someone, later identified as Jackson, matching the description of the individual. When Jackson saw the officer, he started to run. Mahoney noticed that Jackson was wearing one shoe. The police caught up with Jackson and arrested him.

At trial, Williams testified for the State. According to Williams, Jackson drove them to a residential area on the night in question. Williams stayed in the vehicle while Jackson went to someone's house. After waiting for Jackson to return, Williams decided to go find Jackson and ask him to take him home. Williams told Jackson that he did not

3

want to take part in breaking into someone's home. But Williams also testified that he and Jackson previously broke into people's homes. While Williams was telling Jackson that he wanted to go home, a light came on in the house and he heard a man ask something like, "[W]ho's in my house?" Williams and Jackson ran back to Jackson's vehicle. Williams got in the passenger seat and Jackson got in the driver's seat. The police chased Jackson and Williams, Jackson crashed the vehicle, and the two were ultimately arrested.

The jury found Jackson guilty of aggravated burglary and fleeing or attempting to elude a police officer. Jackson was sentenced to 84 months' imprisonment.

Jackson timely appeals.

I.    DID THE DISTRICT COURT ERR BY IMPROPERLY INSTRUCTING THE JURY?

Jackson first argues that the district court erred by improperly instructing the jury on the mental state required for the charge of aggravated burglary. The State agrees that the district court erred but argues that the error does not require reversal.

"When analyzing jury instruction issues, we follow a three-step process:

"'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.'

"... '[W]hether a party has preserved a jury instruction issue will affect [the appellate court's] reversibility inquiry at the third step.' [Citations omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

4

"No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous." K.S.A. 2017 Supp. 22-3414(3).

At the second step, we consider whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. At the third step, in this instance we apply the clear error standard because the party did not object to the jury instruction below. Under this standard, we "will only reverse the district court if an error occurred and [we are] 'firmly convinced that the jury would have reached a different verdict had the instruction error not occurred.' The party claiming a clear error has the burden to demonstrate the necessary prejudice. [Citations omitted.]" 307 Kan. at 318.

Jury Instruction No. 10 specified that in order to find Jackson guilty of aggravated burglary, the jury must find:

> "1.     The defendant entered or remained in a residence . . . .

> "2.     The defendant did so without authority.

> "3.     The defendant did so with the intent to commit a theft therein.

> "4.     At the time there was a human being, to-wit: Melvin and Mary Myer in the residence.

> "5.     This act occurred on or about the 8th day of October, 2015, in Wyandotte County, Kansas."

Jury Instruction No. 11 stated:

> "The State must prove that the defendant committed the crime of Aggravated Burglary, knowingly.

> "A defendant acts knowingly when the defendant is aware of the nature of his conduct that the State complains about."

Jackson did not object to the instructions.

While the State agrees the instructions were erroneous, because Jackson did not object below, it is his burden to firmly convince us that a different verdict would have been reached had the error not occurred. See *McLinn*, 307 Kan. at 318.

When deciding whether a different verdict would have resulted in the absence of the error, we consider the entire record, including the other jury instructions, counsels' arguments, and whether the evidence is overwhelming. See *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

In this case Jackson's trial counsel's arguments did not focus on whether Jackson had the intent to commit a theft within the Myers' home. Instead, counsel argued that Jackson had never been in the house at all. In fact, Jackson's counsel stated that because Jackson had never been in the house, the rest of the aggravated burglary jury instruction was "of no meaning."

Additionally, there was overwhelming evidence that Jackson entered the house with the intent to commit a theft. First, there was ample evidence that Jackson was associated with other recent burglaries in the area. Second, the circumstances involved in this case overwhelmingly point to Jackson having entered the home with the intent to steal. Jackson entered the Myers' home in the early morning hours without permission.

6

While in the home he used a flashlight while he was disconnecting the Myers' television. Williams, who was with Jackson at the time, said that Jackson was messing with the television.

A jury faced with this evidence easily could have found that Jackson entered the home with the intent to commit a theft. Jackson fails to firmly convince us that had the error not occurred, the verdict would have been different.

II.    DID THE DISTRICT COURT ERR BY ALLOWING EVIDENCE OF JACKSON'S PRIOR BAD ACTS?

Next, Jackson argues that the district court erred by allowing evidence of prior bad acts. The State argues that Jackson failed to preserve the issue and even if he had preserved it the evidence was admissible. Finally, the State argues that if the evidence was inadmissible, any error was harmless.

Generally, we are precluded from reviewing an evidentiary challenge absent a timely and specific objection made on the record. K.S.A. 60-404; *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862, *cert. denied* 137 S. Ct. 310 (2016). Any pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial, which can be accomplished through a standing objection. See *State v. Holman*, 295 Kan. 116, 127, 284 P.3d 251 (2012), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). But see *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012) (characterizing contemporaneous objection rule as a "prudential rather than jurisdictional obstacle to appellate review"). Kansas appellate courts have, on occasion, refused to strictly apply the contemporaneous objection rule in some contexts, generally upon finding the underlying purpose for the rule has been satisfied. See, e.g., *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 (2013); *State v. Breedlove*, 295 Kan.

481, 490-91, 286 P.3d 1123 (2012); *State v. Spagnola*, 295 Kan. 1098, 1103, 289 P.3d 68 (2012).

Jackson argues the evidence that he was a suspect in multiple burglaries and was being surveilled was inadmissible K.S.A. 60-455 evidence. The district court had granted Jackson's pro se motion in limine which sought to bar any prior record that Jackson might have. But, as Jackson acknowledges in his brief, there was no contemporaneous objection at trial when the evidence was admitted.

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." K.S.A. 60-404. A pretrial objection to the admission of evidence alone does not preserve an issue for appellate review. See *Holman*, 295 Kan. at 127.

We decline to address Jackson's argument because he failed to contemporaneously object to the introduction of the evidence at issue. The cases cited by Jackson to support his argument that we should address the merits of his argument are too dissimilar from the situation in this case. See *Hart*, 297 Kan. at 510-11 (addressing merits of argument when State stipulated to the preservation of defendant's issue); *Breedlove*, 295 Kan. at 490-91 (addressing merits where defendant referenced, without specifically objecting, pretrial objection prior to the evidence being introduced); *Spagnola*, 295 Kan. at 1103 (addressing merits of argument when district court ruled twice on same suppression issue before trial and did not reiterate requirement for contemporaneous objections immediately before trial after ruling on the issue the second time).

Jackson did not offer any sort of contemporaneous objection to the prior bad acts evidence, nor did Jackson reference his earlier pro se motion. Additionally, the district

8

court did not address the issue immediately before trial, nor did the district court indicate that a contemporaneous objection would not be required. Therefore, we will not address the merits of Jackson's argument. See *Dupree*, 304 Kan. at 62.

Jackson also briefly argues that this court has improperly interpreted K.S.A. 60-404 to require a contemporaneous objection when the statute only requires a timely objection. However, the Kansas Supreme Court has held that K.S.A. 60-404, generally, requires a contemporaneous objection. 304 Kan. at 62-63. "This court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its previous position." *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015).

III.    DID THE DISTRICT COURT ERR BY FAILING TO INQUIRE INTO POSSIBLE CONFLICTS BETWEEN JACKSON AND HIS COUNSEL?

Finally, Jackson filed a pro se supplemental brief after the completion of briefing by counsel, arguing the district court erred by failing to inquire into possible conflicts or the breakdown of communication between Jackson and his attorney. He also argues that his counsel failed to recuse the district judge in his case. Jackson's complaints are based on his belief that the district judge was biased against him, there was no communication between him and his attorney, and his attorney failed to secure witnesses who would help his case.

"[A] trial judge who becomes aware of a possible conflict of interest between an attorney and client must inquire, and the failure to do so can require reversal." *State v. Carter*, 284 Kan. 312, 321, 160 P.3d 457 (2007). If an inquiry is made, the refusal to permit the withdrawal of the attorney is reviewed for abuse of discretion. 284 Kan. at 321. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is

9

based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The failure to inquire amounts to an abuse of discretion as an error of law. *State v. McDaniel*, 306 Kan. 595, 606-07, 395 P.3d 429 (2017).

However, the type of relief to which Jackson may be entitled depends on the type of ineffective assistance claim alleged. See 306 Kan. at 607. In the case of deficient attorney performance, the two-part test under *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), is applied: the defendant must first establish deficient performance and then must show a reasonable probability that the result would have been different but for counsel's deficient performance. Another claim, referred to by our Supreme Court as the "*Mickens* reservation"—which may be applicable here—"arises in situations where a conflict is 'rooted in' . . . 'counsel's personal or financial interests.'" *State v. Galaviz*, 296 Kan. 168, 184, 291 P.3d 62 (2012); see *Mickens v. Taylor*, 535 U.S. 162, 174, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002). In those situations, "[r]elief for a trial court's failure to inquire into a potential conflict . . . hinges on an unsettled standard." *McDaniel*, 306 Kan. at 610. Relief could be based upon the *Strickland* standard or the standard articulated in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

> "Under the *Cuyler* test, the defendant must demonstrate counsel labored under an active conflict of interest that affected the adequacy of the representation. This test differs from the *Strickland* standard in that '"prejudice will be presumed only if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown."' [Citations omitted.]" *McDaniel*, 306 Kan. at 610.

Jackson's trial counsel was appointed in May 2016, after his first two attorneys were allowed to withdraw. Shortly after his new attorney was appointed, Jackson filed a motion to dismiss his counsel. However, it does not appear from the record that a hearing on this motion was held, and Jackson does not mention it in later hearings.

10

In September 2016, Jackson's trial counsel requested a continuance, stating that he needed more time to interview potential witnesses that Jackson wished to have testify at trial. Jackson agreed with his attorney's statement. Throughout this period Jackson filed several pro se motions that his counsel believed did not have merit. The motions were all heard in December 2016; some were granted and others were denied by the district court or withdrawn by Jackson. At no point did Jackson express displeasure with his trial counsel to the court in person. While his written communications may have expressed his dissatisfaction with his counsel, he did not bring up such dissatisfaction to the judge while discussing his case before voir dire. A few days after the jury found him guilty, Jackson filed a pro se motion to dismiss counsel. Due to the allegations in Jackson's motion, the district court allowed his trial counsel to withdraw and assigned a new attorney.

On appeal, Jackson relies on *State v. Jenkins*, 257 Kan. 1074, 898 P.2d 1121 (1995), *overruled in part by Mickens*, 535 U.S. 162, to support his position that he need not show that a conflict significantly impacted his counsel's performance to obtain relief. *Jenkins* held that where defense counsel also represented a key prosecution witness, there was an actual conflict and the defendant was not required to show prejudice to obtain a reversal. 257 Kan. at 1087. However, in *Galaviz*, 296 Kan. 168, Syl. ¶¶ 6, 7, the Kansas Supreme Court held that even if the trial court fails to inquire about a conflict, "a defendant must demonstrate that a conflict of interest adversely affected the adequacy of the attorney's representation" and recognized that *Jenkins* was overruled in part by *Mickens*.

Jackson fails to show how any potential conflict adversely impacted his trial attorney's representation under either *Strickland* or *Cuyler*. Jackson's counsel requested a continuance to speak with Jackson's proposed witnesses and called Jackson's fiancée as a witness. He cross-examined the State's witnesses in an attempt to show that no State witness could positively place Jackson in the Myers' home. And Jackson's counsel argued

that Jackson was not in the home. His arguments were unsuccessful, but that does not mean that there was a conflict between Jackson and him, nor does it mean that any potential conflict adversely affected his performance as Jackson's counsel. Jackson fails to meet his burden to show that his conviction requires reversal because the trial court did not inquire into potential conflicts between himself and his trial counsel.

Finally, Jackson's second pro se issue merely incorporates his prior arguments under a new heading stating that "Trial Counsel . . . failed to recuse Judge." For the same reasons outlined above, we are unpersuaded by his argument.

Affirmed.