NOT DESIGNATED FOR PUBLICATION

No. 121,863

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ORVILLE WILLIAM SIEG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed April 9, 2021. Affirmed in part, reversed in part, sentence vacated in part, and remanded with directions.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Shawn M. Boyd*, assistant county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and MCANANY, S.J.

PER CURIAM: Orville William Sieg appeals from his convictions for felony interference with law enforcement and criminal damage to property. Sieg argues there was insufficient evidence to support a felony interference with law enforcement conviction because there was no evidence presented to establish the officer was executing a felony warrant. We agree. Because we agree the evidence was insufficient to convict Sieg on the first issue, we decline to address Sieg's second argument as moot. Sieg's final argument claims the evidence failed to show he knowingly damaged the officer's uniform and equipment. After reviewing the arguments and the record, we affirm the criminal

1

damage to property conviction but reverse the felony interference with law enforcement conviction and remand for sentencing for misdemeanor interference with law enforcement.

FACTS

In August 2017, Sieg was charged with the following offenses:

- Count I:  Aggravated battery on a law enforcement officer in violation of K.S.A. 2017 Supp. 21-5413(b)(1)(B) and (d)(1)(A), a severity level 4 person felony.
- Count II:  Interference with law enforcement in violation of K.S.A. 2017 Supp. 21-5904(a)(3) and (b)(5)(A), a severity level 9 nonperson felony.
- Count III:  Driving while license canceled, suspended, or revoked (3rd or subsequent conviction) in violation of K.S.A. 2017 Supp. 8-262(a)(1), a class A nonperson misdemeanor.
- Count IV:  Criminal damage to property in violation of K.S.A. 2017 Supp. 21-5813(a)(1) and (c)(3), a class B nonperson misdemeanor.
- Count V:  Reckless driving in violation of K.S.A. 2017 Supp. 8-1566, an unclassified misdemeanor.

Sieg's jury trial occurred on June 4, 2018. Before the parties gave their opening statements and outside the presence of the jury, the State revealed it had instructed its witnesses not to discuss the exact nature of Sieg's outstanding warrant "in any way, shape, or form" and to mention only that there was a warrant. The trial judge noted "that would not be an attempt to bootleg [K.S.A.] 60-455 evidence in" and that proving the stop was for an existing warrant was an "integral part" of the State's proof. Defense counsel responded, "That's fine, judge. I appreciate that." The parties also explained Sieg

2

stipulated he was guilty of Count III, driving while license suspended, and the trial court found him guilty.

The State's first witness was Leavenworth Police Officer Noah Wooten, who testified he was driving past the gas station in Leavenworth at around 12:41 a.m. on the morning of July 29, 2017. He observed Sieg walking outside the store alongside the gas pumps and knew Sieg had an active arrest warrant from a few days before. When asked on cross-examination whether the warrant was for "violent activity," Wooten said, "That would depend on what you would consider violent activity based on what that warrant's for. . . . It was a certain type of warrant, and my prior contacts with Mr. Sieg necessitated immediate contact with him on my part."

Wooten made a U-turn and drove back to the gas station. When he pulled into the parking lot, he no longer saw Sieg by the pumps but observed two cars parked next to each other as if the drivers were talking to each other. After activating his body camera, Wooten parked his patrol car approximately 15 to 20 feet in front of the vehicle he believed to be Sieg's. Before exiting to make contact with Sieg, he requested backup from dispatch to his location, and he saw Sieg staring at him from the driver's seat of one of the vehicles.

As Wooten exited his vehicle, he called to Sieg by saying his first name. Sieg responded, "What did I do now," so Wooten informed Sieg about the warrant. Wooten continued approaching and opened the door of the vehicle, reaching inside to try and get Sieg out of the car to take him into custody. Sieg began revving the vehicle's engine and reaching for the gearshift, prompting Wooten to exclaim, "Don't do it, don't do it, and, Get out of the car." Sieg did not respond but began striking the officer's hands with his fists and trying to push him out of the vehicle.

Sieg eventually shifted the vehicle into drive and began driving southwest toward the street, accelerating quickly. Wooten said he had no time to react and managed to hang on to Sieg and part of the vehicle as it proceeded through the parking lot. Wooten initially managed to run alongside the vehicle, but his feet began to drag before ultimately going airborne. Meanwhile, Sieg continued trying to push him out of the vehicle. As they reached the street, Wooten lost his grip and fell away from the vehicle.

Upon letting go of the vehicle, Wooten avoided the rear driver's side tire and rolled away. He managed to get up and started chasing the vehicle as it left the scene speeding away. Next, Wooten notified dispatch of what had happened and provided a description of the vehicle and the vehicle's direction of travel.

As a result of being dragged, Wooten suffered injuries to his knees and right forearm, hand, and little finger. Both his pants and shirt were torn and destroyed along with damage to his boots, radio, handgun, and pistol magazine.

Wooten's body cam video was admitted as State's Exhibit 1 and played for the jury. The State also admitted and played for the jury copies of several security camera videos from the gas station showing Sieg inside the store before the incident, walking to the vehicle, and driving forward after Wooten's patrol car passes. One video showed Wooten parking his car in front of Sieg's vehicle, getting out and walking toward the front driver's door, and then Sieg's vehicle quickly accelerating to leave the parking lot.

The State called Lori Tavis, Sieg's ex-girlfriend, to testify. Tavis acknowledged she owned the vehicle Sieg was driving that night and was sleeping in the passenger seat while Sieg was in the store. She woke up as Sieg left the gas pumps to pull next to another vehicle.

According to Tavis, Wooten exited his vehicle after pulling in front of them, called Sieg by his first name, and told him about the warrant. Tavis said Sieg was standing outside the car with the door open when the officer arrived, then started getting into the car as he approached. Wooten told Sieg that he "didn't have to do what he was getting ready to do," which Tavis did not understand at the time. Sieg began driving away with Wooten hanging onto the door and asking Sieg to stop. Tavis was screaming at Sieg to stop and not to hurt Wooten. At one point, Tavis heard Sieg say, "[F]uck the police." As Sieg continued driving away, he told Tavis "to shut up" when asked what was going on.

After the State rested, Sieg testified and offered his own version of the events. According to Sieg, he did not see Wooten's patrol vehicle until it pulled in front of where he was parked. When Wooten approached the vehicle, Sieg was sitting inside with the door closed. Sieg could not recall whether Wooten said anything at first but agreed he saw Wooten approaching and asked, "What did I do now," as reflected on the body cam video.

Sieg testified after Wooten mentioned the warrant, he moved to open the door and the car revved. Sieg grabbed the steering wheel and turned it so as not to run into the patrol car. According to Sieg, "The door closed and I took off," and then Wooten ran alongside the vehicle without hanging onto the door. Sieg denied hitting or otherwise making any physical contact with Wooten. Sieg believed Wooten knew him from a recent encounter during which the police shot Sieg's cousin. Sieg claimed he was in fear and wanted to leave before something similar happened to him.

During the jury instruction conference, neither party objected to the instructions proposed by the trial court. On appeal, Sieg challenges the jury instruction for Count II, interference with law enforcement by obstructing legal process. The jury was instructed the State needed to prove:

5

"1.    Noah Wooten was authorized by law to serve a warrant.

"2.    The defendant knowingly resisted Noah Wooten in the service of the warrant.

"3.    At the time the defendant knew or should have known that Noah Wooten was authorized by law to serve a warrant.

"4.    This act occurred on or about the 29th day of July 2017 in Leavenworth County Kansas.

"The State must prove that the defendant committed the crime interference of law enforcement by obstructing legal process, knowingly. A defendant acts knowingly when the defendant is aware of the nature of the defendant's conduct that the State complains about."

The jury found Sieg guilty of the lesser included offense of battery against a law enforcement officer on Count I, guilty on Count II of felony interference with law enforcement, and guilty on the remaining charges.

At sentencing, Sieg's criminal history score was A. The district court imposed a 16-month prison sentence on the felony interference with law enforcement conviction as the primary offense, then ran the sentences for the remaining counts concurrently.

I.    DID THE STATE PRESENT SUFFICIENT EVIDENCE TO PROVE FELONY INTERFERENCE WITH LAW ENFORCEMENT?

Sieg argues his conviction for felony interference with law enforcement must be reversed because the State presented no evidence about the type of warrant Wooten was trying to execute when Sieg fled. He asserts the evidence only shows that Wooten knew Sieg had an outstanding arrest warrant, but not specifically that the warrant was for a felony.

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Resolving a sufficiency challenge involves interpretation of a statute, which is a question of law subject to unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

The State charged Sieg with interference with law enforcement under K.S.A. 2017 Supp. 21-5904(a)(3), which defines that offense as "knowingly obstructing, resisting or opposing any person authorized by law to serve process in the service or execution or in the attempt to serve or execute any writ, warrant, process or order of a court, or in the discharge of any official duty." The statute also provides that a conviction for interference with law enforcement under this subsection is a felony if committed "in the case of a felony, or resulting from parole or any authorized disposition for a felony," and is a misdemeanor if committed "in the case of a misdemeanor, or resulting from any authorized disposition for a misdemeanor, or a civil case." K.S.A. 2017 Supp. 21-5904(b)(5).

Sieg argues the only testimony presented reflected Wooten was attempting to execute an arrest warrant—i.e., not that it was a *felony* arrest warrant. Sieg is correct. Based on Wooten's testimony the evidence was insufficient to support the fact the warrant he was attempting to execute was a felony warrant. The complaint specifically alleged Wooten "was authorized by law to serve a *felony* warrant" and that Sieg's actions were "committed in the case of a *felony* or resulting from parole or an authorized disposition for a *felony*." (Emphases added.) There was no other evidence introduced by any witness or exhibit showing the warrant was for a felony. Thus, the evidence is

7

insufficient to support Sieg's conviction for felony interference with law enforcement officer.

Our Supreme Court in *State v. Hudson*, 261 Kan. 535, 538-39, 931 P.2d 679 (1997), held under a previous version of the interference statute that "[t]he touchstone for the classification of the offense is the reason for the officer's approaching the defendant who then flees or otherwise resists, and not the status of the defendant." Hudson had outstanding felony arrest warrants, but that fact only became clear to the officers after he fled following an observed traffic violation. The trial court ultimately reduced a felony interference charge to a misdemeanor for that reason. When the State appealed, the Kansas Supreme Court relied on the officer's subjective intent as he discharged his official duty—i.e., at the time of the traffic violation—in affirming the trial court's ruling. 261 Kan. at 538-39.

The State concedes Wooten testified only that he was trying to execute a "warrant" when Sieg drove away from the gas station. Wooten's description of the warrant basically was one that "necessitated immediate contact with [Sieg] on my part." Even after viewing this evidence in the light most favorable to the State, a rational fact-finder could not conclude that Sieg was guilty beyond a reasonable doubt of felony interference. The evidence only showed that Wooten knew Sieg had an active warrant of some kind, not that he knew it was a warrant arising "in the case of a felony, or resulting from parole or any authorized disposition for a felony," as required by K.S.A. 2017 Supp. 21-5904(b)(5)(A).

But the State also claims there was an off the record agreement among the parties not to present any information about the level of the warrant. As support, the State notes the announcement made to the district court before the parties gave their opening statements. The State acknowledged it was trying "to avoid any issues with K.S.A. 60-455 evidence." The State also points out the jury instruction on the interference charge—

8

which Sieg never objected to below—did not mention the level of the warrant because "all parties agreed it was for a felony warrant." However, we cannot address the alleged agreement because it is not part of the record.

Even though there might have been an off the record agreement, Sieg's argument is persuasive. Thus, Sieg cannot be guilty of felony interference of law enforcement, but he is guilty of the lesser charge of misdemeanor interference with a law enforcement officer. See *State v. Kingsley*, 252 Kan. 761, 782, 851 P.2d 370 (1993) (finding evidence insufficient to support aggravated arson and remanded with directions to resentence defendant for lesser included offense of simple arson). We reverse Sieg's conviction for felony interference with law enforcement, vacate his sentence for that conviction, and remand the case with directions to resentence Sieg for misdemeanor interference with law enforcement.

II.     DID THE TRIAL COURT ERR BY FAILING TO GIVE A LESSER INCLUDED OFFENSE JURY INSTRUCTION?

Sieg next argues the trial court erred by omitting a lesser included offense jury instruction on the interference charge, specifically for a misdemeanor level of the same offense. The State responds this argument becomes moot if we agree there was no evidence present of felony interference with law enforcement. We agree. Because we find the issue is now moot, we exercise our discretion not to address the issue any further.

III.    WAS THE EVIDENCE SUFFICIENT TO PROVE CRIMINAL DAMAGE TO PROPERTY?

Last, Sieg argues his conviction for criminal damage to property must be reversed because there was no evidence presented to show that he "knowingly" damaged Wooten's uniform and equipment. The crux of his argument is that the evidence available in the record only established he acted recklessly because he did not anticipate Wooten would

9

try to grab onto him and the car when Sieg started driving away and then fell away, hitting the ground and damaging his uniform and equipment.

The State responds Wooten's and Tavis' testimony establishes sufficient evidence Sieg knew his actions could damage Wooten's uniform and equipment.

Our standard of review for a sufficiency of the evidence challenge requires us to view all the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We will not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *Chandler*, 307 Kan. at 668. If resolving a sufficiency challenge involves interpretation of a statute, that presents a question of law subject to unlimited review. *Alvarez*, 309 Kan. at 205.

The State charged Sieg with criminal damage to property under K.S.A. 2017 Supp. 21-5813(a)(1), which defines the offense as "[k]nowingly damaging, destroying, defacing or substantially impairing the use of any property in which another has an interest without the consent of such other person." Sieg contends the State failed to prove he committed the offense "knowingly," which in this context means being "aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2017 Supp. 21-5202(i). He asserts the State only presented evidence of "reckless" conduct, which exists when a defendant "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2017 Supp. 21-5202(j).

Sieg claims his state of mind was more like reckless conduct because the evidence shows he was not aware Wooten would attach himself to Sieg or the car, then lose his grip, and tear his uniform and damage his equipment as he fell away. As support, Sieg

10

relies on *In re D.A.*, 40 Kan. App. 2d 878, 197 P.3d 849 (2008). That case involved two 12-year-old boys who broke into and vandalized a church, causing extensive damage and ultimately leading to adjudications for burglary and criminal damage to property. One of the boys, D.A., appealed and argued in part that his diminished mental capacity negated the mental culpability requirement of the offenses. On appeal, a panel of this court affirmed D.A.'s juvenile adjudication for the offenses, finding his actions were not accidental or involuntary. 40 Kan. App. 2d at 892.

Simply put, Sieg's argument is not persuasive. While his actions certainly constituted reckless conduct, the evidence also establishes he acted knowingly. Wooten and Tavis both testified Wooten was reaching into the vehicle when Sieg began revving the engine. Sieg then shifted into drive and began driving away very quickly, with Wooten holding onto him and the car. Tavis testified Sieg said "fuck the police" during the incident. Sieg testified the vehicle's door closed as he drove away and Wooten ran alongside without ever hanging from the door. Based on these conflicting stories, the jury returned a guilty verdict on the criminal damage to property charge, and we will not disturb it on appeal. See *Chandler*, 307 Kan. at 668.

We also note the State charged Sieg with aggravated battery against a law enforcement officer, but the jury found him guilty only of simple battery against a law enforcement officer. The type of battery of which he was ultimately convicted required the State to prove that he "*knowingly* caus[ed] physical contact with another person when done in a rude, insulting or angry manner." (Emphasis added). K.S.A. 2017 Supp. 21-5413(a)(2). Although Sieg did not have to challenge his battery conviction alongside his criminal damage to property conviction, the two charges are very similar because they share a mental culpability requirement. In other words, if a rational fact-finder could find Sieg guilty of "knowingly" battering Wooten by driving away while the officer was hanging on to the vehicle, then the same jury would have found him guilty of "knowingly" causing property damage to the officer's uniform and equipment. For these

11

reasons, we conclude there was sufficient evidence to support Sieg's conviction of misdemeanor criminal damage to property.

In conclusion, we affirm Sieg's conviction of misdemeanor criminal damage to property; but we reverse Sieg's conviction for felony interference with law enforcement, vacate the sentence for that conviction, and remand for Sieg to be resentenced on his conviction of misdemeanor interference with law enforcement.

Affirmed in part, reversed in part, sentence vacated in part, and remanded with directions.